IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BETOF                          :

                                     :

     v.                              :   Civil Action No. DKC 11-1452

                                     :

SUBURBAN HOSPITAL, INC., et al.      :

                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is the motion to dismiss or, alternatively, for summary judgment filed by Defendants Suburban Hospital, Inc. ("Suburban Hospital" or "the hospital"), and Johns Hopkins Health System Corporation ("JHHS") (ECF No. 21). The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted in part and denied in part.

**I.   Background**

**A.   Factual Background**

The following facts are either alleged by Plaintiff David Betof or taken in the light most favorable to him. On April 9, 2007, Suburban Hospital hired Mr. Betof, a Caucasian male, as a

laboratory operations manager.[1]   At that time, Mr. Betof was supervised by David Hornbeck, the hospital's division director of laboratory services, and he "consistently received raises and positive performance evaluations."   (ECF No. 18-2 ¶ 15).   In October 2009, Mr. Hornbeck used the "N-word" to describe several African-American employees working at the hospital.   (ECF No. 21-2, at 1).   Mr. Betof demanded that Mr. Hornbeck stop using such offensive language in the workplace, but Mr. Hornbeck "continued to use the same racial epithet in reference to other African-American employees," including Dr. Jeronica Goodwin, a human resources director at Suburban Hospital.   (ECF No. 18-2 ¶ 20).   As a result, Mr. Betof filed an EEOC complaint against Mr. Hornbeck with Dr. Goodwin and Dennis Parnell, Vice President of Human Resources, alleging a problem of race discrimination in his department.   Suburban Hospital "took no action against Mr. Hornbeck" as a result of Mr. Betof's complaint (ECF No. 21-2, at 1), and Mr. Parnell informed Mr. Betof that "there were no other witnesses to Mr. Hornbeck's racial epithets" (ECF No. 18-2 ¶ 25).

---

[1]   JHHS thereafter purchased the hospital, and it became a wholly owned subsidiary of JHHS.   The hospital "is now known as Suburban Hospital, Johns Hopkins Medicine."   (ECF No. 18-2 ¶ 11).

Beginning in May 2010, numerous African-American employees in the same department filed EEOC complaints with the hospital, some of which implicated Mr. Hornbeck. According to Mr. Betof, none of these complaints "mentioned [his] name." (ECF No. 21-2, at 2).[2] Shortly thereafter, Suburban Hospital terminated Mr. Hornbeck due to compliance violations in his division.[3]

Around the same time, the hospital also promoted two Caucasian employees without first posting the availability of the positions they filled, "which violated the Company's policies." (*Id.*). Several minority employees complained to Mr. Betof that they believed this promotion process was discriminatory. In response, Mr. Betof "warned the Human Resources department" about these concerns and urged the department not to follow through with the promotions in this manner. (*Id.*). Suburban Hospital nonetheless promoted the previously selected employees.

Approximately two months later, on July 14, 2010, Mr. Parnell and Dr. Goodwin met with the employees in Mr. Betof's department to discuss "the racial issues" raised by the numerous

---

[2] According to an affidavit submitted by Dr. Goodwin, however, "Mr. Betof was identified as the manager involved" in several of these EEOC complaints. (ECF No. 23-1 ¶¶ 4-5).

[3] Joseph Linstrom took over Mr. Hornbeck's position and became Mr. Betof's new supervisor.

EEOC complaints that had been filed. (*Id.*). Just prior to the meeting, Dr. Goodwin indicated that hospital management was unsure why employees continued to file such complaints despite Mr. Hornbeck's departure. She then "told Mr. Betof that he was being implicated as . . . an individual responsible for alleged racial discrimination" in that department. (ECF No. 18-2 ¶ 31). Dr. Goodwin also remarked that "[s]ometimes the person who files the discrimination complaint" – referring to Mr. Betof's October 2009 complaint – "does so to hide [his] own culpability." (ECF No. 21-2, at 2). Mr. Betof defended himself and stated that "nothing had even been done" with regard to his EEOC complaint. (*Id.*). Later, at the meeting, Dr. Goodwin commented to Mr. Betof that Suburban Hospital "had a problem in that there were no minorities in senior leadership." (*Id.*).

Two days later, on July 16, 2010, Mr. Betof met with Mr. Parnell. During this meeting, Mr. Parnell informed Mr. Betof that a change was needed and that Mr. Betof's employment with Suburban Hospital would be terminated. Mr. Betof's termination letter stated, in relevant part, as follows:

> During the past several months, many employee-related issues have surfaced in the core laboratory which have caused us to assess the effectiveness of management of the lab. This week, we conducted several discussions with the laboratory staff in an effort to better understand why we continue to grapple with these employee issues.

> After careful consideration of the issues
> presented to us by the staff, we have
> concluded that a change in management is
> required to correct these issues.

(ECF No. 18-2 ¶ 36).   Deborah Ayres, a white female "who had

never held a laboratory director position," was selected to

replace Mr. Betof.   (*Id.* ¶ 35).

### B.   Procedural Background

Mr. Betof filed a charge of discrimination with the

Maryland Commission on Human Relations approximately four months

later.   In the charge of discrimination, Mr. Betof stated that

he believed his termination stemmed from discrimination "based

on [his] race and sex," as well as retaliation for the

complaints he had made.   (ECF No. 21-2, at 2).   On May 27, 2011,

more than 180 days after he filed the charge of discrimination,

Mr. Betof filed a complaint in this court against Suburban

Hospital, John Hopkins University, and Johns Hopkins Medicine,

alleging race discrimination and retaliation in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981, and the Maryland Fair

Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't §

20-606.   (ECF No. 1).   Suburban Hospital and Johns Hopkins

Medicine moved to dismiss or, alternatively, for summary

judgment,[4] and Johns Hopkins University moved to dismiss.   On August 5, 2011, Mr. Betof moved to amend his complaint, and the court granted this request.  (ECF Nos. 8-9).[5]

One week later, Mr. Betof moved for leave to file a second amended complaint listing JHHS as a defendant, removing Johns Hopkins Medicine as a defendant, and adding a claim of gender discrimination under Title VII and § 1981.   (ECF No. 11). Before the court had ruled on this motion, Mr. Betof filed a stipulation of dismissal as to all claims against Johns Hopkins University.  (ECF No. 13).  The court approved the stipulation of dismissal on August 17, 2011, and granted Mr. Betof's motion for leave to amend approximately two weeks later.   On September 13, 2011, Mr. Betof requested leave to file a third amended complaint ("the complaint") to remove references to Johns Hopkins University from his pleading.  (ECF No. 18).   The remaining defendants consented to the motion, and the court granted Mr. Betof's request.

On September 28, 2011, Suburban Hospital and JHHS moved to dismiss or, alternatively, for summary judgment.  (ECF No. 21).

---

[4] According to this motion, Johns Hopkins Medicine is a trade name owned by JHHS, but it is not a legal entity that can be sued.

[5] All motions filed by the defendants with regard to Mr. Betof's original complaint were denied as moot.

Mr. Betof filed his opposition on October 17, 2011.   (ECF No. 22).   Defendants timely replied.   (ECF No. 23).

## II.  Standards of Review

Defendants' motion implicates two standards of review. Here, two exhibits submitted by Suburban Hospital and JHHS are relevant to resolution of the pending motion:   (1) the charge of discrimination that Mr. Betof filed with the Maryland Commission on Human Relations, and (2) the affidavit of Dr. Goodwin. Generally, when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."   Fed.R.Civ.P. 12(d).   Courts in this district, however, have repeatedly held that the plaintiff's charge of discrimination, when attached to a defendant's motion to dismiss, may be considered without converting the motion to one for summary judgment.   *E.g.*, *Avery v. Astrue*, No. WDQ-11-2612, 2012 WL 1554646, at *1 n.4 (D.Md. Apr. 27, 2012); *Cuffee v. Verizon Commc'ns, Inc.*, 755 F.Supp.2d 672, 676 & n.2 (D.Md. 2010); *Garrison v. McCormick & Co., Inc.*, No. JFM 10-CV-0298, 2010 WL 2651639, at *1 n.2 (D.Md. June 30, 2010).[6]

---

[6] Noting that courts may consider documents attached to a motion to dismiss without converting the motion to one for summary judgment so long as those documents are authentic and integral to the complaint, these opinions have reasoned that a

With regard to Mr. Betof's race discrimination claim, the parties present arguments that require consideration of both exhibits.  Accordingly, Defendants' motion will be treated as a motion for summary judgment as to that count.  With regard to the remaining claims, the parties' arguments address whether Mr. Betof has stated a claim for relief, and the court can resolve these arguments by looking solely to the complaint and the charge of discrimination.  Defendants' motion will thus be treated as one to dismiss as to these claims.

### A.  Standard of Review for Motion to Dismiss for Failure to State a Claim

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3

---

charge of discrimination not contested by the plaintiff is integral to the administrative history of a subsequent civil complaint.  *Avery*, 2012 WL 1554646, at *1 n.4 (citing *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565 (2[d] Cir. 2006)); *Cuffee*, 755 F.Supp.2d at 676 & n.2; *Garrison*, 2010 WL 2651639, at *1 n.2.

(2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, the court need not accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B.    Standard of Review for Motion for Summary Judgment**

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).   At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

Defendants contend that Mr. Betof's claims against them fail for a variety of reasons.   JHHS asserts that Mr. Betof's allegations against it are insufficient because the complaint indicates only that JHHS is the parent company of Suburban Hospital.   To the extent this argument is unpersuasive, JHHS then joins Suburban Hospital in arguing that Mr. Betof cannot set forth claims for race discrimination or retaliation because he lacks direct evidence or facts supporting a *prima facie* case. Defendants further contend that his claim of gender discrimination under § 1981 and Title VII must fail because § 1981 does not provide redress for such claims and, as to Title VII, "the Third Amended Complaint is devoid of any factual content showing intentional [gender] discrimination." (ECF No. 21-1, at 16).   Mr. Betof did not respond to JHHS's argument about the insufficiency of his allegations based on its status as the hospital's parent company, but he has generally opposed Defendants' remaining arguments.

11

**A. All Claims Against JHHS Must Be Dismissed Because Its Status as Suburban Hospital's Parent Company Does Not Render It Liable for the Hospital's Allegedly Unlawful Acts**

The complaint makes only fleeting reference to JHHS. Indeed, it merely states that the hospital is a "wholly-owned subsidiary" of JHHS and that JHHS purchased the hospital at some unspecified time after Mr. Betof began his employment. (ECF No. 1 ¶¶ 4, 11). To establish a claim of employment discrimination or retaliation against JHHS, Mr. Betof must allege that JHHS was his "employer." *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 979-80 (4th Cir. 1987).

> [Pursuant to the doctrine of limited liability, a] parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity. . . . Thus, when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer.

*Id.* at 980-81 (further explaining that this conclusion "foster[s] stability in commerce" and encourages business development).[7] A plaintiff must, therefore, allege that the

---

[7] Although *Johnson* involved claims arising under Title VII, its reasoning is equally applicable to FEPA and § 1981 claims. FEPA defines "employer" in virtually the same way as Title VII, and Maryland courts have repeatedly emphasized this identity of language when relying upon Title VII to interpret and apply FEPA. *Molesworth v. Brandon*, 341 Md. 621, 632-33 (1996); *cf.*

12

relationship between a parent and its subsidiary is "[some]thing more than a normal parent-subsidiary relationship," *id.* at 981, in order for claims against the parent corporation to proceed past the motion-to-dismiss stage, *Adler v. Anchor Funding Servs., LLC*, No. 3:10cv515, 2011 WL 1843226, at *3-4 (W.D.N.C. May 16, 2011) (granting a Rule 12(b)(6) motion in favor of a parent company where the complaint set forth no factual allegations "[b]eyond alleging ownership"); *Taylor v. Delmarva Power & Light Co.*, No. 1:10-CV-01796 RDB, 2011 WL 826356, at *2-4 (D.Md. Mar. 7, 2011) (dismissing employment discrimination claims against a parent company because the plaintiff failed to plead facts in the complaint suggesting "that the two corporations [were] one employer").

Here, there is no allegation that the relationship between JHHS and Suburban Hospital is "anything more than a normal parent-subsidiary relationship." *Johnson*, 814 F.2d at 981. The

---

*Brown v. Balt. Police Dep't*, No. RDB-11-00136, 2011 WL 6415366, at *14 (D.Md. Dec. 21, 2011) ("[T]his Court applies Title VII case law in adjudicating FEPA claims." (internal quotation marks omitted)); *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 482 n.8 (2007) (describing Title VII as "the federal analog" to FEPA). Additionally, although § 1981 extends to circumstances beyond employment, *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 211-12 (4th Cir. 2007), where a discrimination or retaliation claim is based solely on the existence of an employment relationship, courts have applied the same analysis as that utilized in Title VII cases, *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 343-44 (5th Cir. 2005); *Richard v. Bell Atl. Corp.*, 946 F.Supp. 54, 61 & n.2 (D.D.C. 1996).

complaint contains no factual averments indicating either that JHHS controlled the hospital's employment decisions or that JHHS dominated the hospital's operations such that the two corporations essentially became the same entity.  Mr. Betof has made no contrary argument in his opposition papers. Accordingly, in the absence of allegations to overcome the "strong presumption" of JHHS's limited liability and in light of Mr. Betof's lack of response on this issue, his claims against JHHS will be dismissed.  *Id.*

> **B. Summary Judgment Is Warranted in Suburban Hospital's Favor on Mr. Betof's Race Discrimination Claim**

Mr. Betof has alleged that Suburban Hospital terminated him on the basis of his race.  A plaintiff may establish a claim for intentional race discrimination using two methods.[8]  First, he may demonstrate "through direct or circumstantial evidence" that his race "motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).  Alternatively, he may "proceed under a 'pretext' framework" – commonly referred to as the *McDonnell Douglas* approach – "under which the employee, after establishing

---

[8] Section 1981 and FEPA claims for race discrimination are analyzed under the same framework as Title VII. *Wise v. Gallagher Basset Servs., Inc.*, 228 F.Supp.2d 671, 674 (D.Md. 2002) (FEPA); *Dang v. Inn at Foggy Bottom*, 85 F.Supp.2d 39, 41 (D.D.C. 2000) (§ 1981).

a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination." *Id.* at 285. Mr. Betof asserts that his race discrimination claim should proceed under both the direct evidence and pretext frameworks.

### 1. Mr. Betof Fails to Present Direct Evidence of Race Discrimination

Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal quotation marks omitted). "Only the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination." *Signal v. Gonzales*, 430 F.Supp.2d 528, 541 n.5 (D.S.C. 2006) (internal quotation marks and bracket omitted). If believed, direct evidence "would prove the existence of a fact . . . without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (internal quotation marks omitted), *rev'd on other grounds by* 517 U.S. 308 (1996). To defeat a motion for summary judgment, the evidence must show that the employer announced, admitted, or "otherwise unmistakably indicated" that an impermissible

15

consideration was a determining factor, or that discrimination can properly be assumed from the circumstances. *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982).

Mr. Betof contends that Dr. Goodwin's reference to him being implicated in other employees' EEOC complaints and her statement that he may have filed his EEOC complaint "to hide [his] own culpability" both constitute direct evidence of race discrimination. (ECF No. 21-2). This contention is without merit for two reasons.[9] First, these statements do not evince any racial animus. They are, in fact, facially race-neutral. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) ("Facially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker."). Mr. Betof asks the court to infer that, because Dr. Goodwin might have been suggesting that he was racist, "[t]he most logical implication here is that had [he] been black, he wouldn't have been terminated." (ECF No. 22, at 8). Setting aside the fact

---

[9] Because Mr. Betof's arguments under the direct evidence framework fail for the two reasons discussed below, there is no need to consider separately whether, on the record here, there is evidence demonstrating that Dr. Goodwin held the status of "decisionmaker" at Suburban Hospital. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring in the judgment) ("[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, [do not] suffice to satisfy the plaintiff's burden."), *superseded by statute on other grounds as recognized in Hill*, 354 F.3d at 286-87.

that this interpretation of Dr. Goodwin's statements is hardly "[t]he most logical" (*id.*), inferences of this sort "necessarily implicate[] the *McDonnell-Douglas* burden-shifting scheme" and cannot serve as direct evidence, *Mungro v. Giant Food, Inc.*, 187 F.Supp.2d 518, 521 (D.Md. 2002); *see also O'Connor*, 56 F.3d at 548.

Second, there is no indication that Dr. Goodwin's statements were in any way linked to his subsequent termination. To constitute direct evidence, statements must be directly related to the employment decision in question. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, (4th Cir. 1999), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 943 (4th Cir. 1992). Indeed, even if a statement and a subsequent adverse action share a temporal relationship, courts have generally declined to find a sufficient nexus between the two events on that basis alone. *Compare, e.g., O'Connor*, 56 F.3d at 549 (concluding that a supervisor's statement at an employee's birthday party about attracting younger employees was "unrelated to" the supervisor's termination of the plaintiff two days later and did not constitute direct evidence (internal quotation marks and citation omitted)), *and Ayela-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96-97 (1st Cir. 1996) (holding that statements

17

made "on or about the date" of the plaintiffs' dismissals regarding the "black mafia . . . getting rich at the expense of the company" did not constitute direct evidence because there was no indication that the remarks occurred "in connection with the employment decisional process"), *with EEOC v. CTI Global Solutions, Inc.*, 815 F.Supp.2d 897, 907-09 (D.Md. 2011) (reasoning that repeated statements by a supervisor at the time of termination that he was removing multiple pregnant employees from duty because he believed their pregnancies might cause harm to the employees and their unborn children constituted direct evidence).

No such nexus exists here.   Dr. Goodwin made these statements just prior to a meeting with hospital employees to discuss "racial issues" presented by the numerous EEOC complaints that African-American employees had filed with the human resources department.   (ECF No. 21-2, at 2).   Thus, Dr. Goodwin's statements occurred in a context separate from Mr. Betof's termination two days later by Mr. Parnell.   Mr. Betof has, therefore, failed to set forth direct evidence of race discrimination, and the analysis turns to the burden-shifting paradigm of *McDonnell Douglas*.[10]

---

[10]   Although Mr. Betof generally contends that there is direct evidence Suburban Hospital discriminated against him on

the basis of race due to his conversations with Dr. Goodwin, he only specifically mentions the two statements above in setting forth this argument.  To the extent he intended Dr. Goodwin's comment to him about the lack of minorities in senior leadership to serve as direct evidence, this argument also fails because the statement did not "bear directly" on Mr. Betof's subsequent termination.  *Warch*, 435 F.3d at 520.  At the outset, it is unclear whether Mr. Betof's position as a laboratory manager would even be considered a senior leadership position.  To the extent the laboratory manager position is not part of the hospital's senior leadership, the statement cannot serve as direct evidence of race discrimination against Mr. Betof.  *See Stronach v. Va. State Univ.*, 631 F.Supp.2d 743, 749 (E.D.Va. 2008) (explaining that a plaintiff could not rely on a statement about ridding a particular department of foreign faculty members as direct evidence because he was "neither a foreigner nor a faculty member" in that department).

Even if the laboratory manager position did fall within the hospital's senior leadership, Dr. Goodwin's statement did not indicate an intent to displace any employees currently holding such positions.  *Cf. O'Connor*, 56 F.3d at 549 (explaining that a statement made two days before the plaintiff's termination about the company needing to "get some young blood" did "not evince an intent to discharge an older employee").  Dr. Goodwin's statement also occurred in a context separate from Mr. Betof's subsequent termination.  *Compare Paris v. Arc/Davidson Cnty., Inc.*, 307 F.Supp.2d 743, 754-55 (M.D.N.C. 2004) (concluding that a statement about the company "not employ[ing] enough black people" did not constitute direct evidence because, among other reasons, there was no indication that it was "more than just [a] stray or isolated remark[]"), *and Candillo v. N.C. Dep't of Corrs.*, 199 F.Supp.2d 342, 350 (M.D.N.C. 2002) (explaining that derogatory comments about Hispanics were not direct evidence where the comments occurred in response to the plaintiff's request for secretarial support, "not the decision whether to promote" the plaintiff), *with Schafer v. Md. Dep't of Health & Mental Hygiene*, 359 F.App'x 385, 388-89 (4th Cir. 2009) (holding that a statement about a department's lack of African-American female management and the necessity "to hire some," coupled with another statement that "an African-American female was going to be hired" in the position for which the plaintiff had applied was direct evidence of race discrimination).

### 2.   Mr. Betof Fails to Set Forth a *Prima Facie* Case for Discriminatory Discharge

Absent direct evidence, Mr. Betof may prove his case for race discrimination with circumstantial evidence using the pretext framework established in *McDonnell Douglas*.  *Paris*, 307 F.Supp.2d at 754.  Under this framework, Mr. Betof must first establish a *prima facie* case of discriminatory discharge.  A *prima facie* for discriminatory discharge requires Mr. Betof to demonstrate that:  (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) his position was filled by a similarly qualified applicant outside the protected class.  *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).[11]

---

[11] Suburban Hospital urges the court to impose a stricter standard in this case because it involves a claim of "reverse discrimination."  (ECF No. 21-1, at 9).  The United States Court of Appeals for the Fourth Circuit has expressly declined to decide whether a plaintiff in a reverse discrimination suit must produce additional evidence, beyond the traditional *prima facie* requirements, to establish race discrimination.  *Weeks v. Union Camp Corp.*, 215 F.3d 1323, 2000 WL 727771, at *6 n.13 (4th Cir. 2000) (unpublished table opinion).  District courts within the circuit have split on this issue.  *Compare Stock v. Universal Foods Corp.*, 817 F.Supp. 1300, 1305-06 (D.Md. 1993) (declining to require a plaintiff alleging reverse racial discrimination to demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority" (internal quotation marks omitted)), *aff'd*

Here, Mr. Betof has stated that he is Caucasian.   Suburban Hospital has presented undisputed evidence that Ms. Ayres, Mr. Betof's replacement, is also Caucasian.   (*See* ECF No. 23-1 ¶ 7) ("Ms. Deborah Ayres is a white employee.").   "[T]here is a powerful inference . . . that discrimination did not motivate the employer" where the employee selected to replace the plaintiff is of the same race as the plaintiff.   *Cutshall v. Potter*, 347 F.Supp.2d 228, 237 (W.D.N.C. 2004) (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (applying this inference in the context of a claim for discriminatory failure to promote and granting summary judgment in the defendant's favor), *aff'd*, 146 F.App'x 702 (4th Cir. 2005); *see also Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005) (describing this rule as "so well-settled that [the Fourth Circuit had] previously affirmed dismissals under prong four without even issuing published decisions" (citing *White v. S.C. Dep't of Social Servs.*, No. C/A 3:01-2926-24BC, 2003 WL 22989086, at *6 (D.S.C. Feb. 6, 2003), *aff'd*, 67 F.App'x 847 (4th Cir. 2003); *Hill v. Wal-Mart Stores, Inc.*, No. 5:00CV425-F(2), 2000 WL

---

*on other grounds*, 16 F.3d 411 (4th Cir. 1994), *with Gilbert v. Penn-Wheeling Closure Corp.*, 917 F.Supp. 1119, 1126 (N.D.W.Va. 1996) (imposing such a requirement).   This issue need not be resolved under the facts of the present case, however, because Mr. Betof fails to set forth even a traditional *prima facie* case for discriminatory discharge.

21

33682673, at *4 (E.D.N.C. Sept. 26, 2000), *aff'd*, 6 F.App'x 168 (2001)); *Rogosin v. Mayor, City Council of Balt.*, 197 F.Supp.2d 345, 350 (D.Md. 2002) (granting summary judgment in a defendant's favor on a race discrimination claim where the Caucasian plaintiff was replaced by another Caucasian employee). This inference is operable in the present case.   Because Mr. Betof cannot demonstrate that he was replaced by someone outside his protected class, he fails to establish a *prima facie* case for discriminatory discharge.

###    3.    Mr. Betof's Rule 56(d) Request Will Be Denied

In a final attempt to avoid summary judgment against him on the race discrimination claim, Mr. Betof asserts that even if he lacks direct evidence or facts sufficient to set forth a *prima facie* case, "it would be inappropriate to dismiss this case prior to discovery." (ECF No. 22, at 8).   As a general matter, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to the motion." *Anderson*, 477 U.S. at 250 n.5.   To render this general rule applicable, however, the nonmovant must clearly demonstrate the need for discovery pursuant to Rule 56(d), which allows the court to deny summary judgment or delay ruling on the motion until discovery has occurred if the "nonmovant shows by affidavit or declaration that, for specified

22

reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).[12] Courts interpreting this rule have consistently held that a nonmovant must provide "a reasonable basis to suggest that [the requested] discovery would reveal triable issues of fact" in order for such a request to be granted. *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010); *see also Richard v. Leavitt*, 235 F.App'x 167, 167 (4th Cir. 2007) (affirming the district court's denial of a Rule 56(d) request when the plaintiff failed to provide a basis for believing that the information sought actually existed); *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (reasoning that the Rule 56(d) affidavit must "identify[] the probable facts not available" and sought through discovery); *Wright v. Eastman Kodak Co.*, 550 F.Supp.2d 371, 382 (W.D.N.Y. 2008) ("While a Rule 56[(d)] discovery request may be granted to allow a plaintiff to 'fill material evidentiary gaps,' it may not be premised solely on speculation as to evidence which *might* be discovered: 'it does not permit a plaintiff to engage in a fishing expedition.'"), *aff'd*, 328 F.App'x 738 (2[d] Cir. 2009).

---

[12] In an apparent procedural oversight, Mr. Betof makes no reference to Rule 56(d) in setting forth this argument, instead repeatedly referencing Rule 56(f). The 2009 Amendments to the Federal Rules of Civil Procedure transferred the language of former Rule 56(f) to Rule 56(d).

Mr. Betof's Rule 56(d) affidavit seeks extensive discovery to locate "a document, email, conversation or some other evidence" to substantiate his race discrimination claim. (ECF No. 22, at 9). Requesting discovery of virtually all information related to his termination, Mr. Betof asserts that "[i]t's very possible" that Suburban Hospital fired him to "placate the African American employees[]" who had filed EEOC complaints and that the hospital only hired Ms. Ayres to disguise its discrimination against him. (*Id.*).[13]   The apparent driving force behind these bald assertions is the fact that Suburban Hospital "provided no specific reason for terminating" Mr. Betof's employment. (*Id.* at 8).   The hospital's failure to provide Mr. Betof with a reason for his termination – beyond the need for a "change" (ECF No. 18-2 ¶ 36) – does not, however, indicate that he was terminated on the basis of his race.   *See Kahn v. Sec'y of Labor*, 64 F.3d 271, 279 (7th Cir. 1995) (explaining that "an employer may terminate an employee for . . . no reason at all").[14]

---

[13] It is worth noting that neither Mr. Betof's complaint nor his charge of discrimination contain any factual allegations supporting these assertions.

[14] Mr. Betof also suggests that Suburban Hospital's past troubles with potential race discrimination against African-American employees somehow justifies the inference that his own

At bottom, the crux of Mr. Betof's argument is that he "should be allowed to find out if [he] has a claim, rather than that [he] has a claim for which [he] needs . . . discovery." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2^d Cir. 1994). But Rule 56(d) does not authorize "fishing expedition[s]." *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D.Md. 2002), *aff'd*, 50 F.App'x 179 (4th Cir. 2002). Indeed, the court has discretion to reject a discovery request, "even if properly and timely made through a Rule 56[(d)] affidavit, if it deems the request to be based on speculation as to what potentially could be discovered." *Paddington Partners*, 34 F.3d at 1138. A thorough review of Mr. Betof's opposition papers and Rule 56(d) affidavit reveals no plausible basis for believing that the information sought here would turn up during discovery. Permitting Mr. Betof to engage in the discovery he seeks would be akin to granting him a license to explore in the hope that he might uncover some new basis to justify a race discrimination claim. Because "a rule 56[(d)] affidavit is not properly granted to explore," *Duprey v. Twelfth Judicial Dist. Ct.*, 760 F.Supp.2d 1180, 1203 (D.N.M. 2009), as "[s]uch divagation is decidedly not the object of the discovery procedures outlined in

---

termination was based on race. This contention is equally without merit.

the Federal Rules," *Paddington Partners*, 34 F.3d at 1138, the request for discovery will be denied.[15]

### C.   Mr. Betof Has Stated a Retaliation Claim

Suburban Hospital also contends that Mr. Betof's complaint fails to state a cause of action for retaliation.  To allege a *prima facie* case for retaliation under Title VII, § 1981, and FEPA, a plaintiff must state the following elements: (1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action.  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (Title VII); *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1402 (4th Cir. 1994) (FEPA); *Pulley v. KPMG Consulting, Inc.*, 348 F.Supp.2d 388, 396 (D.Md. 2004) (§ 1981), *aff'd* 183 F.App'x 387 (4th Cir. 2006).[16]  The parties agree that Mr. Betof's

---

[15] Because Mr. Betof's remaining claims will be resolved under the motion to dismiss standard, his Rule 56(d) request is inapplicable to those claims.

[16] Retaliation claims - like other employment discrimination claims - may be proven using direct evidence.  *Peters v. Jenney*, 327 F.3d 307, 320 n.15 (4th Cir. 2003).  Mr. Betof contends that Dr. Goodwin's statement about filing a discrimination complaint to hide his own culpability constitutes direct evidence that he was terminated in retaliation for filing an EEOC complaint. Much like the analysis with regard to his race discrimination claim, however, because this statement neither evinced a retaliatory attitude nor bore directly on Mr. Betof's termination, it is not direct evidence of retaliation.

termination was an adverse employment action. *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007). They disagree, however, about the extent of his protected activity and whether his factual allegations are sufficient to demonstrate causality.

Pursuant to 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Protected activity of an employee, therefore, can take the form of either opposing a practice prohibited under Title VII (pursuant to the opposition clause) or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). Although Mr. Betof's EEOC complaint reported race discrimination directed at employees other than himself, the filing of this complaint with Mr. Parnell and Dr. Goodwin in October 2009 constitutes protected activity. *Martin v. State Univ. of N.Y.*, 704 F.Supp.2d 202, 229 (E.D.N.Y. 2010) ("[A] supervisor who acts as an advocate for the alleged victim may be said to have engaged in opposition under Title VII."); *see also Pulley*, 348 F.Supp.2d

at 396 (concluding that filing a formal complaint about employment discrimination with the human resources department constituted protected activity).  Suburban Hospital does not dispute this conclusion, arguing instead that this EEOC complaint was the only protected activity in which Mr. Betof engaged.  Mr. Betof, however, contends otherwise (ECF No. 22, at 11) (stating that he had filed "two" complaints with the hospital), and the charge of discrimination supports this contention.

According to the charge of discrimination, Mr. Betof again contacted the human resources department in May 2010 to complain about the hospital's promotion of two Caucasian employees to positions that had not been internally posted, which violated hospital policy.  In doing so, he explained that numerous "minority employees" had contacted him about this issue and believed that this promotion process was discriminatory, particularly in light of the other racial problems they had previously presented to human resources.  (ECF No. 21-2, at 2). Mr. Betof then "warned" the human resources department not to follow through with the promotions in this manner.  (*Id.*).

"Voicing one's opinions in order to bring attention to an employer's discriminatory activities" may constitute opposition activity.  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d

253, 259 (4th Cir. 1998).  The relevant inquiry is (1) whether the plaintiff subjectively (in good faith) believed that the defendant engaged in an unlawful action; and (2) whether this belief was objectively reasonable in light of the facts. *Peters*, 327 F.3d at 321.  At the motion-to-dismiss stage, Mr. Betof has set forth facts to satisfy this two-pronged inquiry. Indeed, given that he reported this incident to human resources, as he had done with his formal complaint in October 2009, the facts suggest that Mr. Betof subjectively believed that the promotion process was unlawful.  Additionally, in light of the apparently ongoing complaints by African-American employees about "racial remarks" and other incidents of racial discrimination against minorities in his department, Mr. Betof's belief may have had a reasonable basis in fact.  Accordingly, for purposes of resolving the motion to dismiss, the facts indicate that Mr. Betof twice engaged in protected activity – by filing an EEOC complaint with human resources in October 2009 and by complaining to that department in May 2010 about the promotion process for Caucasian employees.

With the extent of Mr. Betof's protected activity determined, the analysis turns to whether he has sufficiently alleged a causal connection between his complaints to human resources and his subsequent termination.  The burden of showing

this causal nexus is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998) (explaining that "little is required" to establish a causal connection). "[T]emporal proximity between a protected activity and an adverse employment action has been found sufficient to establish a causal connection," although a plaintiff must establish that the employer knew about his protected activity when it took the adverse action. *Finnegan v. Dep't of Pub. Safety & Corr. Servs.*, 184 F.Supp.2d 457, 463 (D.Md. 2002). Suburban Hospital contends that Mr. Betof's allegations fail to allege adequately such a causal connection because he was not terminated until July 16, 2010, between nine and ten months after the filing of his EEOC complaint.

This argument fails for two reasons. First, the Fourth Circuit has expressly declined to determine "how close a temporal connection must [be] for . . . a causal nexus [to exist]," while noting that its "precedent establishes that several months is sufficiently proximate to satisfy the requirement." *Brockman v. Snow*, 217 F.App'x 201, 207 (4th Cir. 2007). Indeed, in at least two cases, the Fourth Circuit has found a causal connection between protected activity and adverse employment action involving a time period of nine months or

longer.  *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)
(nine to ten months); *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir.
1994) (one complaint filed nearly twenty-one months prior to the
adverse action).   This reasoning is particularly salient at the
motion-to-dismiss stage.

Second, and most importantly, the hospital's argument
overlooks the totality of circumstances from the time that Mr.
Betof filed his EEOC complaint until his termination.   The
charge of discrimination indicates that he complained to human
resources about a second incident of perceived racial
discrimination approximately two months prior to his
termination.   This relatively short timeframe itself suggests a
causal connection.   *See Williams v. Cerberonics, Inc.*, 871 F.2d
452, 457 (4th Cir. 1989) (inferring causality from an adverse
action that occurred three and one-half months following
protected activity).   Additionally, in both May 2010 and again
just two days prior to his termination, Mr. Betof brought his
EEOC complaint up to Dr. Goodwin.   In the conversation on July
14, 2010, he even questioned Suburban Hospital's apparent lack
of response to this complaint.[17]   Courts considering similar

---

[17] Although the hospital ultimately terminated Mr. Hornbeck
– the subject of Mr. Betof's October 2009 complaint, Mr.
Hornbeck's termination did not occur until May 2010 and,
according to the complaint, resulted not from his use of racial

circumstances have found a causal connection to exist between the protected activity and subsequent adverse employment action. *E.g.*, *Williams v. G4S Secure Solutions (USA), Inc.*, No. ELH-10-2476, 2012 WL 1698282, at *14-15 (D.Md. May 11, 2012) (concluding that a plaintiff had sufficiently demonstrated causality where she repeatedly complained about workplace discrimination and stopped receiving assignments just five days following her final complaint and reasoning that "an employer's reaction might change in the fact of . . . repeated complaints"); *Briggs v. T&D Plumbing & Heating Co., Inc.*, No. WDQ-10-2714, 2011 WL 3798227, at *5 (D.Md. Aug. 24, 2011) (denying a motion to dismiss where the plaintiff's termination occurred seven months after the filing of his discrimination charge, but he had complained about the company's purported "inaction" just prior to his firing); *McGrath-Malott v. Md.*, 565 F.supp.2d 656, 671 (D.Md. 2008) (finding sufficient evidence of a causal link between the plaintiff's EEOC complaint and her termination where the complaint, filed four months earlier, came up in a meeting with human resources personnel just three weeks

---

slurs in the workplace but "compliance violations." (ECF No. 18-2 ¶ 26).

before she was fired).[18]   Accordingly, Mr. Betof's allegations are sufficient to state a cause of action for retaliation, and the motion to dismiss on this ground will be denied.

> **D.   Mr. Betof Has Stated a Gender Discrimination Claim Under Title VII, but His § 1981 Claim Must Be Dismissed**

Suburban Hospital has moved to dismiss Mr. Betof's gender discrimination claims – which he brings pursuant to Title VII and § 1981 – on two grounds.  The hospital first contends that claims of gender discrimination are not viable under § 1981.  It is axiomatic that § 1981, "although applicable to racial discrimination, does not apply to situations of sexual discrimination."  *Cornell v. Gen. Elec. Plastics*, 853 F.Supp. 221, 223 (S.D.W.Va. 1994).  Mr. Betof's gender discrimination claim pursuant to § 1981 must, therefore, be dismissed.

---

[18] Although a plaintiff must ultimately establish that the relevant decisionmaker knew about his involvement in protected activity to succeed in proving the requisite causal connection, *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998), at the motion-to-dismiss stage, he only needs to allege facts that raise his right to relief above the speculative level, *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd on other grounds*, 132 S.Ct. 1327 (2012).  Here, the facts indicate that: (1) Mr. Betof filed his EEOC complaint with Dr. Goodwin and Mr. Parnell; (2) he made the informal complaint in May 2010 to the human resources department; (3) Mr. Betof twice discussed the EEOC complaint with Dr. Goodwin, including one conversation two days prior to his termination; and (4) he was terminated shortly thereafter during a meeting with Mr. Parnell.  Taking these facts in the light most favorable to Mr. Betof and drawing all reasonable inferences in his favor, Mr. Betof has satisfied this standard.

The hospital then turns to the Title VII claim, contending that the complaint's focus on race discrimination and retaliation renders this claim implausible under *Twombly*.   Under the *McDonnell Douglas* framework, a plaintiff creates a presumption of gender discrimination by alleging the following elements:   (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was performing his job at a level that met his employer's legitimate expectations at the time of the adverse action; and (4) that his position remained open or was filled by a similarly qualified applicant outside the protected class.   *Hill*, 354 F.3d at 285; *Venable v. Apfel*, 19 F.Supp.2d 455, 462 (M.D.N.C. 1998) (explaining that a plaintiff had "raised an inference that he was discriminated against based on his sex" by making out a *prima facie* case for sex discrimination).[19]

Mr. Betof has presented factual allegations to create such a presumption of discrimination.   He is male and was terminated from his position as laboratory operations manager, thereby satisfying the first and second elements.   The complaint and charge of discrimination also demonstrate that he held his position for more than three years and that he "consistently

---

[19]  Mr. Betof has not argued that he possesses any direct evidence of gender discrimination.

received raises and positive performance evaluations" (ECF No. 18-2 ¶ 15) and "had . . . no disciplinary problems" (ECF No 21-2, at 1).   These factual averments are sufficient to allege that Mr. Betof was meeting the hospital's legitimate expectations prior to his termination.   As to the fourth prong, he contends that he was replaced by Ms. Ayres, a female, who – unlike him – had no laboratory management experience.

Although sparse, these allegations suffice to set forth a *prima facie* case of gender discrimination.   *See Burdine*, 450 U.S. at 253 (noting that the "burden of [alleging] a *prima facie* case of disparate treatment is not onerous").   Indeed, while the Fourth Circuit has upheld dismissal of a complaint alleging employment discrimination when *none* of the complaint's "24 paragraphs of facts" supported that bald conclusion, *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 344 (4th Cir. 2006), it has found dismissal inappropriate – even at later stages of the proceedings – where a plaintiff's factual allegations "are sufficient to establish a *prima facie* case," *Holmes v. Bevilacqua*, 774 F.2d 636, 640 (4th Cir. 1985).   Suburban Hospital wholly overlooks the facts supporting Mr. Betof's *prima facie* case for gender discrimination in arguing for dismissal.   The motion to dismiss Mr. Betof's gender discrimination claim on this basis must, therefore, be denied.   *Cf. Fletcher v.*

*Tidewater Builders Ass'n, Inc.*, 216 F.R.D. 584, 590 & n.7 (E.D.Va. 2003) (declining to dismiss a disability discrimination claim where the plaintiff had set forth "sufficient facts for a *prima facie* case").

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss or, alternatively, for summary judgment will be granted in part and denied in part.  A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge